## Staunton

William E. Garrison v. Sallie Burns, an Infant, Etc.

September 10, 1941.

Record No. 2398.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*A. E. S. Stephens* and *Lett, Murray & Ford,* for the plaintiff in error.

*Rixey & Rixey,* for the defendant in error.

Campbell, C. J., delivered the opinion of the court.

This writ of error brings under review a judgment obtained by the plaintiff, Sallie Burns, an infant, against William E. Garrison, the defendant.

The plaintiff, a young woman sixteen years of age, brought by her father, P. B. Burns, as next friend, an action at law against Nat Clements and William E. Garrison, to recover damages for personal injuries resulting from a collision between two automobiles driven by the respective defendants.

The case was tried before a jury which found a verdict against both Clements and Garrison. The court overruled the motion of defendants to set aside the verdict and entered a joint judgment against them.

Each defendant applied to the court for a writ of error. The court refused the writ as to Clements and granted it upon the separate petition of Garrison.

Plaintiff, at the time of the accident, was a guest in the car driven by Clements and was occupying the front seat with him. In the car with them, occupying the rear seat, were Miss Hilda Brickle and S. W. Dunning. Defendant and his wife were in the Garrison car.

The accident occurred on December 10, 1939, at approximately 5:30 P. M., near the intersection of U. S. Route 460 and a dirt road known locally as the Lake Prince Road. Route 460 runs approximately east and west, while the Lake Prince Road runs north and south. The defendant was traveling west on Route 460 and Clements was traveling south on the intersecting road. Route 460 is a four lane highway and is approximately forty-two feet wide. As one approaches Route 460 traveling south on the Lake Prince Road, at a point thirty feet from the north edge of Route 460 he is confronted with a stop sign. As one enters the highway the view is unobstructed for a distance of 1,570 feet looking east and a distance of 500 feet to the west.

As the jury has settled all conflicts in the evidence in favor of the plaintiff, the question presented here is, does the evidence adduced by the plaintiff convict the de-

fendant, Garrison, of such negligence as warrants the finding of the jury that he was guilty of concurring negligence in the operation of his car and that this negligence contributed to plaintiff's injuries?

The verdict of the jury against Clements, which has been approved by this court, is conclusive of the fact that Garrison was not guilty of such gross negligence as constituted his action the sole proximate cause of the accident. If not the sole proximate cause of the accident, then wherein was Garrison negligent?

The case of the plaintiff against Garrison may be thus summarized: Clements stated that on the afternoon of the accident he left his home in Nansemond county, intending to visit the service station of his father located in the direction of the city of Suffolk; that the plaintiff was riding in the front seat; that it was getting pretty dusky, dark; that when he got to the highway he saw a car approaching, traveling toward Suffolk; that he stopped his car and waited for it to pass; that he first saw the Garrison car approaching at a distance of approximately three hundred and fifty yards away; that he entered the highway and was in the act of making a left hand turn when his car was struck on the left fender by the Garrison car; that the Garrison car was in plain view and was, in his opinion, making a speed of approximately fifty-five miles an hour; that the defendant was in the act of veering to the left when the impact occurred about the center of the highway; that he was going five or six miles an hour and he thought he had sufficient time to get across the highway; that the lights on the Garrison car were not burning, but the car was in plain view. Asked why he did not stop, he answered: "I was almost—he was too far—I was almost in the intersection of the road. I wasn't expecting him to cut to the left."

The defendant, Garrison, called by the plaintiff as an adverse witness, stated in substance, that he was a farmer, sixty-two years of age; that he resided in Isle of Wight county, and on the afternoon of the accident

he was proceeding to his home; that his wife was with him; that he was traveling down the highway at an approximate speed of forty-five miles an hour; that he was driving on the right hand side of the highway; that, when approximately three hundred yards from the intersection, he observed Clements' car on the Lake Prince Road, approching the highway; that he continued in the direction he was traveling until within fifty or seventy-five feet of the intersection, when Clements drove onto the highway in front of him; that he then drove to his left in order to avoid a collision; that Clements did not stop and the impact occurred; that he saw Clements' car slow down as it approached the highway and that he thought it would stop; that when Clements approached the highway, he failed to give a left hand sign; that the view from the intersection toward him was unobstructed.

Testifying as witnesses for the plaintiff, Miss Brickle and Dunning corroborated the statement of Clements that he stopped his car in order to let a car traveling towards Suffolk pass the intersection before he entered the highway. Dunning further stated that Clements did not wait any considerable time, but started across the highway as soon as the car passed; that the impact occurred when Clements was in the act of making a left turn; that the Garrison car was in plain view.

In *Otey* v. *Blessing*, 170 Va. 542, 197 S. E. 409, Mr. Justice Holt stated the rule applicable to the respective rights of a traveler upon the highway and one entering the highway from a secondary road. In that case it is said:

"It is natural to assume that one on a main highway, rapidly approaching a crossing, would take it for granted that another on a secondary road likewise approaching it, but who stopped, did so with the intention of giving arterial traffic the right of way. One who is required to stop has not the right of way. That right, assuming that it had theretofore existed, is then suspended and remains suspended until he can proceed with safety."

■■ Judging from the numerous accidents which occur at street and highway intersections, it is apparent that the drivers of automobiles either do not understand the significance of the stop signs placed at all intersections, or that they carelessly or recklessly ignore said signs. A stop sign upon the highway is a proclamation of danger and there is in principle no difference between the duty of one driving a vehicle upon the highway to "Stop, look and listen" at a railway crossing, and the duty of one approaching a highway intersection from a secondary road to stop and look. The legislative fiat to stop before entering a main highway means more than the consumption of a split second of time. It means that the stop should be made at a time when to look would be effective. At a railway crossing, unless there is a double track, a driver only has to look in two directions before proceeding to cross the track. At highway intersections, however, motor vehicles, stream-lined for speed and potential instruments of death (to say the least), may run in four directions over four distinct approaches. The reason for the stop sign is thus apparent.

When we apply the legal tape to the facts of this case, these measurements plainly appear: (1) Garrison was traveling the highway on his proper side, at a speed not in excess of the legal limit, to-wit, fifty-five miles per hour; (2) he saw Clements approaching the highway and assumed that he would not enter the highway until the way was clear; (3) before attempting to turn left, Clements failed to give the proper signal.

■■ It may be conceded, as contended, that Garrison's headlights were not on. In view of the admission of Clements that he saw the Garrison car approaching three hundred yards away, it is inconceivable that the absence of lights led him to attempt to enter the highway. It may also be conceded that when Garrison veered to the left he was guilty of an error in judgment. This act of itself does not make him guilty of negligence, if he acted as a person of ordinary prudence would have

acted under the same circumstances. *Lavenstein* v. *Maile*, 146 Va. 789, 132 S. E. 844.

While we are not unmindful of the weight which attaches to the verdict of a jury when the verdict has been approved by the trial court, it is the imperative function of this court to set aside the verdict of a jury, even though approved by the trial court, when the evidence does not warrant the finding of the jury.

A careful analysis of the evidence leads to the inescapable conclusion that the verdict in question is not supported by the evidence. In our opinion, the sole proximate cause of the accident was the negligence of Clements in entering the highway at the time and in the manner shown by the evidence adduced.

The judgment of the trial court will be reversed and a final judgment will be entered in this court for William E. Garrison.

*Reversed and final judgment.*